165 So.2d 78

**J. N. SMITH**

v.

**TOWN OF DORA et al.**

6 Div. 947.

Supreme Court of Alabama.

May 28, 1964.

Markstein & Cain, Birmingham, for appellant.

Wilson & Wilson, Jasper, for appellees.

HARWOOD, Justice.

This is an appeal from a decree dismissing the appellant's petition for supplementary and further relief based on a declaratory judgment previously entered.

It appears from the record that the Town of Dora, Alabama, the Gas Board of the Town of Dora, Alabama, and the Industrial Development Board of the Town of Dora, Alabama, entered into contracts with the respondent, J. N. Smith, doing business as Smith Engineering Company, pertaining to professional services to be performed by Smith.

The Town of Dora, and the Gas Board, and the Industrial Board, filed a declaratory action, in which Smith was the respondent, praying that the contracts be construed and that the court determine the validity, construction, status, and liabilities of the parties thereto.

Smith filed a cross bill and answer in which the validity of the contracts were asserted and in which he prayed that respective damages under each contract be awarded to him. In particular as to contract No. 6201F, being the only contract involved in this appeal, he prayed that the sum of $33,750 be awarded to him.

It appears from the decree that the parties agreed to settle the matters and claims in reference to all portions of the contracts, which agreement was submitted to the court and was approved by the court. However, it appears that as to contract No. 6201F, articles 1, 3, and 4, relating to the payment of a fee to Smith for locating an industry adjacent to property of the Industrial Development Board were excluded from the agreement.

After hearing, the court found that contract No. 6201F between the complainants and the respondent, the Industrial Development Board, was a valid and enforceable contract. However, the court found that the sum of $33,750 claimed by Smith as a locating fee was not due and payable at the time of the bringing of the cross bill, and the court declined to rule thereon, since such ruling would be advisory rather than declaratory. This decree was entered on 6 June 1962.

Thereafter on 24 August 1962, Smith filed a petition for supplemental relief.

It appears that under contract No. 6201F, Smith proposed to perform for the Industrial Development Board of the Town of Dora, which was thereafter termed the "client" in the contract, engineering services for compensation as outlined later in the contract.

As before stated, the settlement agreement entered into during the original hearing excluded from the agreement articles 1, 3, and 4 of contract No. 6201F. These respective articles are as follows:

"ARTICLE 1 — ENGINEERING SERVICES.

"The engineer shall secure an industrial plant that proposes to locate adjacent to the client. These services are limited and are complete upon agreement of the client and industry to locate a plant adjacent to the client.

\*　\*　\*　\*　\*　\*

"ARTICLE 3 — ENGINEER'S FEE.

"The engineer's fee shall be seven and one-half (7½) percent of the engineer's estimate of the net construction cost to be performed by the client and industry. Client's Right of Termination shall be reimbursed for as follows: Engineering at $10.00 per man hour, designing at $7.50 per man hour, drafting at $5.00 per man hour plus the cost of travel, lodging, meals, communications, materials, taxes, and reproductions furnished or performed on the work.

"ARTICLE 4 — PAYMENT OF THE ENGINEER'S FEE.

"Full payment shall be due and payable to the engineer upon agreement between the client and industry to locate such a plant. Prompt payment of the full amount due the engineer shall be considered as a material part of this contract."

In answer to the petition for supplemental relief, the Industrial Development Board set up essentially nonperformance of the contract by Smith, and a number of other defenses.

At the hearing below, the evidence presented by the Industrial Development Board was directed, among other things, at showing that the toy factory which Smith claims to have caused to be located near the Town of Dora, was in truth and in fact proposed to be located there by the president of the toy manufacturing company prior to Smith's injection of himself into the proceedings.

At the conclusion of the hearings on the petition for supplementary relief, the court entered a note of testimony designating the pleading, the exhibits that were introduced, and listing the witnesses, and entered a decree of dismissal of the petition for supplemental relief.

By the note of testimony and the decree entered, no light is shed upon the court's reasons for the order of dismissal.

In this appeal counsel has directed his argument to the proposition that the court erred in denying the petition for supplemental relief in that such denial was contrary to the great weight and preponderance of the evidence in the case.

Appellee's brief is of course directed toward showing that the court was justified in its decree under the facts presented.

■ Article 1, supra, is ineptly drawn and phrased, and ambiguity its chief characteristic. Regardless, it appears from a reading of the article as a whole that the words, "The engineer shall secure an industrial plant * * *" can only be interpreted to mean that the engineer shall procure, or find, or discover a plant.

In this connection, and supportive of the conclusions reached by the court below, Robert G. Duggar, President of the Wilson-Duggar Corporation, testified that during November and December 1961, he had employed Mr. Smith on an hourly basis at stipulated fees to investigate the feasibility of a patented product he was attempting to promote, and to make an engineering investigation and product development investigation of the product. All during this time he himself was attempting to locate a site for a factory. At no time was Mr. Smith present, and the plans for estab- During this time Mr. Smith suggested that Duggar could just as well manufacture the product himself as to license it out.

About the 21st of December 1961, he had about made up his mind to manufacture the product himself and went by Mr. Smith's office. Mr. Smith told him he had a friend with the State Development and Planning Board and suggested he call him in reference to possible available plant sites. They called the State Planning Board, and by extension phone, Mr. Smith introduced Duggar to Mr. Harry Shaddix. He inquired of Mr. Shaddix as to existing buildings around the State and Mr. Shaddix told him of buildings in Haleyville and in Dora. The next day Duggar went to Dora to look at the building there. He contacted Mr. Bob Lovelady and Mr. Layton, Mayor of Dora. They invited him to go out to a vacant plant and look it over. The size of the building seemed adequate and he asked them questions relative to the availability of water and fire protection, police surveillance, etc. Mr. Layton told him that if there was any possible way they could get him to locate in Dora they wanted to assist, and Mr. Layton agreed that they could do all of the things which Mr. Duggar had inquired about. He then told Mr. Layton and Mr. Lovelady that if they would do those things, he would be very pleased to locate his plant in Dora.

This was on 31 December 1961. At this time Mr. Smith had not, to Duggar's knowledge, ever been to Dora.

This agreement between himself and Lovelady and Layton is the only agreement he has ever had to locate the plant in Dora.

Mr. Duggar knew in a general way only what he wished to be done at the plant. He reported to Mr. Smith that he had found a location and wanted him to go out there to see what needed to be done.

On the first of January 1962, he met Mr. Smith in Dora and they visited the plant site together with Mr. Layton and Mr. Lovelady, and several others. Thereafter they had some more meetings at which Mr. Smith employed to help locate a plant site. lishing the factory were more definitely gone into.

At a meeting on or about 16 January 1962, they reviewed the possibility of obtaining government financing. Mr. Smith was familiar with obtaining government financing, and "prosecuted" the idea of increasing the size of the project.

In connection with this plan, applications were made to the Area Redevelopment Administration for a loan, and it appears that this application was prepared in Mr. Smith's office.

It further appears that Mr. Smith at this time also performed engineering service for the Town of Dora, and for the Gas Board of the Town of Dora, and also participated in securing government financing for these projects, and to extend the water system, and the gas system in order to take care of the future needs in connection with the establishment of the Duggar-Wilson plant. However, as afore stated, any dispute as to monies due Mr. Smith for these services have been settled by agreement.

J. L. Layton, Mayor of the Town of Dora, testified that between Christmas of 1961 and New Year's Day 1962, Mr. Duggar came to see him relative to locating a toy factory in Dora, and stated he had heard there was a building in Dora he might possibly use.

They went out and looked at the building and Duggar seemed to like it. Duggar made inquiries as to certain things that would have to be done to make the building suitable for his use, and Mr. Layton informed him that they could do those things if he would come to Dora.

This is the only agreement ever made between Duggar and any of the boards or officials of the Town of Dora, and as of the day of the trial, the Industrial Development Board and the City Council are working toward meeting Mr. Duggar's requests, and when they have met these obligations they expect the plant to locate in Dora.

The contract between Smith and the Industrial Development Board of the Town of Dora was executed on 19 January 1962.

From the testimony of Duggar, and of Mayor Layton, the lower court was fully justified in concluding that the Duggar-Wilson Manufacturing Company was "secured" to locate in Dora on 30 December 1961, and solely through the agreement of Duggar on the one side, and Lovelady, and Mayor Layton on the other, and that Smith's claim for a locating fee resulted from his efforts to inject himself into the picture after the location of the plant, so far as it has been located, was already perfected.

This being a question of fact solely within the province of the trial court to decide, and the court's findings being amply supported by reasonable inferences from the evidence, the decree will not be disturbed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and MERRILL, JJ., concur.